UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiffs,

v.

GVA GROUP INC., ALEKSANDR AGEYEV, JOHN DOES 1 THROUGH 5 AND ABC CORPORATIONS 1 THROUGH 5,

Defendants.
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

25-CV-3240
(Merchant, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company (collectively, "Plaintiffs") bring this action against Defendants GVA Group Inc. ("GVA Group") and Aleksandr Ageyev (collectively, "Defaulting Defendants"), as well as John Does 1 through 5 and ABC Corporations 1 through 5 (collectively, "John Doe Defendants"), alleging an insurance fraud scheme in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as well as New York common law fraud and unjust enrichment claims. *See generally* Dkt. No. 1. Plaintiffs also seek a declaratory judgment under 28 U.S.C. § 2201 regarding Plaintiffs' obligation to pay Defaulting Defendants' unpaid claims. *See id.*

Currently pending before this Court, on a referral from the Honorable Orelia E. Merchant, United States District Judge, is Plaintiffs' motion for default judgment against Defaulting Defendants. *See* Dkt. No. 27; Referral Order, dated Feb. 13, 2026. For the reasons set forth below,

the undersigned respectfully recommends that Plaintiffs' motion be granted in part and denied in part.[1]

## I. Background

### A. Factual Background

The following facts are taken from the Complaint (Dkt. No. 1), Plaintiffs' default judgment motion and the attachments thereto (Dkt. No. 27), and Plaintiffs' submissions in response to various Court orders (Dkt. Nos. 12-18, 20, 29, 30). The facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (noting that "[i]n light of [the defendant's] default, a court is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citation omitted)).

Plaintiffs—corporations organized under the laws of the State of Illinois and having their principal places of business in Illinois—are "duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to their policyholders under and in accordance with New York State law." Dkt. No. 1 ¶¶ 62-67. Pursuant to New York's Comprehensive Motor Vehicle Insurance Reparations Act (the "No-Fault Law"), N.Y. Ins. Law § 5101, *et seq.*, "Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians [("Covered Persons")], which arise from the use or operation of such motor vehicles in the State of New York." Dkt. No. 1 ¶ 19. "Covered Persons can also assign these benefits to doctors and other properly licensed healthcare providers, including

[1] Jessica Argento, a judicial intern who is a second-year law student at St. John's University School of Law, is gratefully acknowledged for her assistance in the research of this Report and Recommendation.

[durable medical equipment ("DME")[2]] retailers, enabling them to bill insurance companies directly for their services." *Id.*

GVA Group—a New York corporation with its principal place of business in Brooklyn, New York—is a retail DME supply company. *Id.* ¶ 69. GVA Group "bills for medical supplies provided to, among others, individuals covered under the No-[F]ault Law." *Id.* ¶ 79. "In exchange for its services, GVA Group accepts assignments of benefits from Covered Persons covered under the No-Fault Law and submits claims for payment to No-Fault insurance carriers, in general, and to Plaintiffs, in particular." *Id.* Ageyev is the "principal, officer, and/or director of GVA Group" and "operated, managed, and/or controlled [GVA Group's] activities." *Id.* ¶ 68.[3]

In this action, Plaintiffs seek "to recover more than $53,000.00 that Defendants stole from Plaintiffs through the submission of thousands of false and/or fraudulent insurance claims for [DME] and/or orthotic devices."[4] *Id.* ¶ 2; *see also* Dkt. No. 27-15 (noting $53,256.23 as the total payments made to GVA Group for which Plaintiffs seek to recover). Plaintiffs allege that Defaulting Defendants—working with certain medical clinics that bill no-fault insurers for medical services operating in the New York metropolitan area ("No-Fault Clinics")—exploited the No-

---

[2] Plaintiffs refer to "DME" generally as "equipment and/or supplies used for medical purposes by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, [and] mattresses." Dkt. No. 1 ¶ 2.

[3] Plaintiffs allege that "[o]n information and belief, John Does 1 through 5 are individuals that are unknown to Plaintiffs, who conspired, participated, conducted, and assisted in the fraudulent and unlawful conduct alleged herein." Dkt. No. 1 ¶ 70. Plaintiffs also allege that ABC Corporations 1 through 5 "are additional companies that are unknown to Plaintiffs that are owned, controlled, and operated by one or more of the John Doe Defendants, which were used in connection with the kickback scheme with the Defendants alleged herein to obtain referrals, prescriptions and/or Covered Persons in furtherance of the scheme." *Id.* ¶ 71.

[4] Per Plaintiffs, "'orthotic devices' generally refers to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes. Such items include, but are not limited to, back braces, cervical collars, knee braces, shoulder braces and wrist braces." Dkt. No. 1 ¶ 2.

Fault system by participating in illegal kickback or other financial compensation agreements. Dkt. No. 1 ¶¶ 3-4. Plaintiffs argue that "unlicensed laypersons, rather than the healthcare professionals working in the No-Fault Clinics, created and controlled the purported patient base at [the No-Fault] Clinics, and directed fraudulent protocols used to maximize profits without regard to actual patient care by exploiting the No-[F]ault Law and applicable Fee Schedule," and in particular, through "various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular." *Id.* ¶ 120. Defaulting Defendants allegedly engaged in these unlawful financial arrangements with the John Doe Defendants, allowing them to submit hundreds of fraudulent charges for DME and/or orthotic devices. *Id*. ¶ 117.

Specifically, Plaintiffs allege that the No-Fault Clinics provided fraudulent prescriptions to Defaulting Defendants that Ageyev, through GVA Group, in turn, "generated and submitted bills to Plaintiffs." *Id*. ¶ 11. The No-Fault Clinics purportedly engaged in the scheme in several ways, including by:

> (i) ensuring that their associated doctors and/or chiropractors (. . ."Health Care Practitioners" or "HCPs") prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population, pursuant to a predetermined course of treatment irrespective of medical necessity, with the prescribed items being dictated by GVA Group;
>
> (ii) ensuring that the prescriptions were sufficiently generic so that the nature, quality, and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone; and/or
>
> (iii) ensuring that the prescriptions were provided directly to GVA Group to ensure that GVA Group could bill Plaintiffs to purportedly fill the prescription rather than allow the possibility that the Covered Person may fill the prescription at a DME retailer of their own choosing.

*Id*. ¶ 5; *see also id.* ¶¶ 134-36, 138-39 (further describing the role of the No-Fault Clinics in the scheme, including "routinely provid[ing] GVA Group with generic, non-descript prescriptions for certain Fee Schedule Items . . . , which GVA Group then used to unilaterally determine the DME

provided to Covered Persons in purported fulfillment of the general prescriptions, in order to bill for the most expensive type of DME and/or orthotic device") .

Using the fraudulent prescriptions received from the No-Fault Clinics, Ageyev—through GVA Group—purportedly submitted bills to Plaintiffs that knowingly misrepresented the actual amounts paid for DME and/or orthotic devices, as well as the cost, quality, and medical necessity of the items purportedly provided and whether these items were reimbursable under the Fee Schedule, which determines the maximum permissible reimbursement amount for which health care providers may charge for services under the No-Fault Law. *See id.* ¶¶ 11-14, 16, 17, 50-53; *see also* Dkt. No. 1-4 at 3-5[5] (representative sample of fraudulent billing for medical equipment and/or services provided regardless of medical necessity), 7-14 (representative sample of unpaid No-Fault claims).

The prescriptions from the No-Fault Clinics were allegedly sent to GVA Group directly, without any involvement from the patients, who were often not given an option to use any other DME retailer other than GVA Group. Dkt. No. 1 ¶ 124. DME and/or orthotic devices that GVA Group purported to provide "seldom varied from patient-to-patient over a given period of time and also did not change based on any differences in the Covered Person's condition, age, complaints, type of accident, or nature of alleged injury." *Id.* ¶ 98. Plaintiffs allege that HCPs at the No-Fault Clinics also routinely provided virtually identical DME and/or orthotic devices to two or more patients who were involved in the same accident, where it is highly improbable that they would require identical care. *Id.* ¶¶ 113-14. As a result of the fraudulent arrangements, Defaulting Defendants "billed hundreds of thousands of dollars to Plaintiffs." *Id.* ¶ 129.

[5] Page citations are to the ECF-stamped pages unless otherwise noted.

Ageyev, through GVA Group, also routinely submitted fraudulent bills to Plaintiffs seeking reimbursement for (i) "expensive custom-fabricated DME and/or orthotic devices, such as shoulder and back braces, that were never provided;" (ii) "expensive DME and/or orthotic devices that required a customized fitting that they never performed;" and/or (iii) "rates under expensive fee schedule codes for DME and/or orthotic devices that GVA Group never actually provided." *Id.* ¶ 147. Additionally, "GVA Group's bills intentionally omitted the make, model, and manufacturer of the DME and/or orthotic devices purportedly provided to Covered Persons in order to conceal the fact that the DME and/or orthotic devices purportedly provided were inexpensive and of poor quality, to the extent they were provided at all." *Id.* ¶ 146; *see also id.* ¶ 182 (alleging that, when GVA Group billed for cervical traction units under a certain code, it "falsely represented that they provided expensive, medically necessary cervical traction units when in actuality they provided cheap, inexpensive items that in many cases were replicas or knockoffs of trademarked items"). "[T]o the extent that they provided any DME and/or orthotic devices at all, [Defendants] provided Covered Persons with inferior, low-quality items, or items that directly contravened the treatment plan indicated by the treating physicians, potentially compromising Covered Persons' health." *Id.* ¶ 54.

The New York No-Fault Law, regulations, and insurance policies require Plaintiffs to process claims within thirty days of receipt of proof of claim. *Id.* ¶¶ 83, 229. In fulfilling this obligation to promptly process claims, Plaintiffs relied on bills, documentation, and other information mailed by Defaulting Defendants to Plaintiffs. *Id.* ¶ 84. According to Plaintiffs, due to Defaulting Defendants' material representations and efforts to conceal their fraud, Plaintiffs did not discover their damages were attributable to the fraud scheme until in or about February 2024.

*Id.* ¶ 230. Plaintiffs ultimately incurred damages of more than $53,000.00 based upon the fraudulent bill submissions. *Id.* ¶ 229.

### B. Procedural Background

Plaintiffs filed the Complaint on June 10, 2025. Dkt. No. 1.

On July 30, 2025, Plaintiffs executed service on GVA Group via service on the New York State Secretary of State. Dkt. No. 9.

As to Ageyev, Plaintiffs initially believed that Ageyev resided at 60 Oceana Drive West, Apt. 6C, Brooklyn, New York 11235. Dkt. No. 12 at 2. Plaintiffs, however, were unable to locate Ageyev at that address when attempting service. *Id.* Following a search for an alternative address for Ageyev, Plaintiffs attempted service at 1133 East 35th Street, Apt. 4D, Brooklyn, New York 11210 (the "35th Street Address")—which was the address listed on GVA Group's license applications—but Plaintiffs found that the apartment was vacant and were unable to locate Ageyev. *Id.* Plaintiffs then attempted service at a third residential address, 1854 Ocean Avenue, Apt. 3F, Brooklyn, New York 11230 (the "Ocean Avenue Address"), but were still unable to locate Ageyev despite numerous attempts to effectuate service. *Id.* As Ageyev is the listed owner of GVA Group, Plaintiffs identified the 35th Street Address as GVA Group's listed address, but, as previously mentioned, Plaintiffs found that the apartment was vacant. *Id.* Plaintiffs additionally identified 2167 East 21st Street, Suite 242, Brooklyn, New York 11229 (the "21st Street Address") as another address used by GVA Group. *Id.* The 21st Street Address, however, was found to be a private mailbox store, not a retail business. *Id.*

On September 4, 2025, Plaintiffs requested an extension of time to effectuate service on Ageyev and leave to serve Ageyev by alternative means; specifically, to effectuate service on Ageyev by serving the law firm representing GVA Group, Ageyev's corporation, in civil actions

before the New York City Civil Court and arbitrations through the American Arbitration Association. *Id.* at 3; *see also* Dkt. No. 13. On September 5, 2025, the Court granted Plaintiffs' motion and extended the deadline to serve Ageyev until October 6, 2025, and granted Plaintiffs leave to serve "Ageyev through counsel for his corporation, Defendant GVA Group, Inc., through the Law Offices of Hillary Blumenthal, 711-32nd Street, 2nd Floor Union City, New Jersey 07087 and through the Law Offices of Zara Javakov, Esq., 100 Livingston Street, 4th Floor, Brooklyn, New York 11201." Text Order, dated Sep. 5, 2025. The Court found that, pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 308(5), Plaintiffs demonstrated the impracticability of traditional service on Ageyev, and that service through counsel for GVA Group was reasonably calculated to give actual notice to Ageyev. *Id.*

On September 25, 2025, Plaintiffs reported that the attempts to serve Ageyev via the Law Offices of Hillary Blumenthal and the Law Offices of Zara Javakov were rejected by counsel. Dkt. No. 15 at 1-2. Plaintiffs requested that Plaintiffs instead be permitted to effectuate service on Ageyev by "(1) mailing the [Summons and Complaint] to Defendant Ageyev, care of the co-defendant corporation he owns, Defendant GVA Group Inc., to the address on file with the [New York Department of State, Division of Corporations ("NYDOS")] for service of process," which is the 35th Street Address; and by "(2) mailing the same to Defendant Ageyev, care of GVA Group Inc, to the address that appears to be a private mailbox store, which Defendant GVA Group Inc. listed on its recent billings to Plaintiffs," which is the 21st Street Address. *Id.* at 2.

On September 26, 2025, the Court granted Plaintiffs' request, and also directed Plaintiffs to serve Ageyev "by publication, as well as via any email address or social media account of his in Plaintiffs' possession or ascertainable with reasonable diligence." Text Order, dated Sep. 26, 2025. The Court also directed Plaintiffs to "'nail' a copy of the summons and complaint to the

35th Street Address, and call any telephone numbers of Defendant Ageyev in Plaintiffs' possession or ascertainable with reasonable diligence and supply the case caption and number," and to "contact the other attorney stated to be representing Defendant Ageyev by Law Offices of Hillary Blumenthal in [Dkt. No.] 15 and attempt to serve Defendant Ageyev through the same." *Id.* Additionally, the Court *sua sponte* extended the deadline to serve Ageyev until October 15, 2025. *Id.*

On September 29, 2025, Plaintiffs reported on its efforts to comply with the September 26, 2025 Text Order, and requested additional time to effectuate service. Dkt. No. 16. On September 30, 2025, the Court extended the deadline to serve Ageyev until November 14, 2025, and directed Plaintiffs to further email a copy of the Summons and Complaint to Oleg Rybak, Esq. of the Ryback Firm PLLC and to also serve Ageyev by publication in accordance with C.P.L.R. § 316. Text Order, dated Sep. 30, 2025.

On November 13, 2025, Plaintiffs reported that, pursuant to the Court's prior orders, Plaintiffs "(1) completed service by affix and mail at the 35th Street Address; (2) completed service by mail to the 21st Street Address; (3) completed service by publication by publishing a notice and summons once in each of four consecutive weeks in the Brooklyn Daily Eagle and the Canarsie Courier; and (4) emailed a copy of the Summons and Complaint to Oleg Rybak." Dkt. No. 18 at 1-2 (footnotes omitted). Plaintiffs also reported that they "attempted to email a copy of the Summons and Complaint to Defendant Ageyev at aageyev@proton.me, the email address on record with the New York City Department of Consumer and Workplace Protection ('DCWP') associated with GVA Group Inc's DCWP license; attempted to identify social media accounts for Defendant Ageyev; and attempted to call Defendant Ageyev at two phone numbers found using online telephone number search websites without success." *Id.* at 2.

On December 4, 2025, Plaintiffs reported that Ageyev and GVA Group were in default. Dkt. No. 20. On December 19, 2025, Plaintiffs sought entry of certificates of default against GVA Group and Ageyev. Dkt Nos. 22, 23. The Clerk of the Court entered certificates of default against GVA Group and Ageyev on December 22, 2025. Dkt. Nos. 24, 25.

On February 12, 2026, Plaintiffs filed the instant motion. Dkt. No. 27.

## II. Service, Jurisdiction, and Venue

The Court "must . . . satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019) (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.")).

### A. Service of Process

"It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him." *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 460 (E.D.N.Y. 2022) (adopting report and recommendation); *see also Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER), 2022 WL 18858972, at *9 (E.D.N.Y. Dec. 5, 2022) (quoting *Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-1788 (MKB) (RML), 2016 WL 6599826, at *3 n.10 (E.D.N.Y. Nov. 7, 2016) ("Ineffective service-of-process is a ground to deny a motion for default judgment.")), *report and recommendation adopted*, Text Order, dated Dec. 22, 2022.

Rule 4(h) of the Federal Rules of Civil Procedure, which governs service on a corporation, partnership, or association, states that an entity "in a judicial district of the United States" must be

served, *inter alia*, "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e) of the Federal Rules of Civil Procedure provides, in relevant part,

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> > (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> >
> > (2) doing any of the following:
> >
> > > (A) delivering a copy of the summons and of the complaint to the individual personally;
> > >
> > > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > >
> > > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

New York law permits service on a corporation by

> [p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee, which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served.

N.Y. Bus. Corp. Law § 306(b)(1)(i); *see also* C.P.L.R. § 311(a)(1) (stating that personal service upon a corporation may be made, *inter alia*, pursuant to section three hundred six or three hundred seven of the business corporation law"); *Logan v. World Luxury Cars, Inc.*, No. 15-CV-248 (ENV) (PK), 2022 WL 2466834, at *405 (E.D.N.Y. Mar. 30, 2022) (noting that "[w]hen the Secretary of State is so served, service on a corporation is complete regardless of whether the corporation receives the Summons and Complaint from the Secretary of State," and recommending that such

service upon the Secretary of State was proper pursuant to Rule 4(h)(1) (citations omitted)), *report and recommendation adopted*, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023).

Here, Plaintiffs served GVA Group on July 30, 2025 by delivering and leaving with an authorized agent of the New York State Secretary of State, at the Office of the Department of State in Albany, New York, two true copies of the Summons and Complaint, along with the statutory fee of $40.00. Dkt. No. 9. Thus, GVA Group was properly served pursuant to N.Y. Bus. Corp. Law § 306(b)(1) and Rule 4(h)(1). *See Vazquez Romero v. La Morenita Fruit Mkt. Corp.*, No. 23-CV-6300 (OEM) (MMH), 2026 WL 687228, at *3 (E.D.N.Y. Mar. 11, 2026) (noting that the method of service on a corporation via delivery to the New York Secretary of State "complies with federal and state procedural rules" (citations omitted)), *report and recommendation adopted*, Text Order, dated Mar. 31, 2026.

Further, as to Ageyev, an individual, state law provides that service of process should first be attempted under C.P.L.R. § 308(1), (2), and (4), which "provide for service by personal delivery, delivery and mailing, and nailing and mailing, respectively." *Weber Cap. LLC v. Racaniello*, 821 F. Supp. 3d 361, 382 (E.D.N.Y. 2026) (adopting report and recommendation) (citation omitted). When service is "impracticable" under paragraphs (1), (2), and (4) of § 308, paragraph (5) permits alternative service "in such manner as the court . . . directs." C.P.L.R. § 308(5).

As discussed at length above, Plaintiffs made numerous attempts to serve Ageyev at several residential and business addresses that Plaintiffs believed to belong to Ageyev. *See* Dkt. Nos. 12, 13. On September 4, 2025, Plaintiffs requested leave, pursuant to C.P.L.R. § 308(5), to serve Ageyev through counsel representing Ageyev's corporation, GVA Group, in collection actions and arbitrations. *See* Dkt. No. 12 at 1, 3. The Court granted Plaintiffs' request, finding that Plaintiffs demonstrated the impracticability of serving Ageyev by other means and that service through

counsel for GVA Group is reasonably calculated to give actual notice of this action to Ageyev. Text Order, dated Sep. 5, 2025. The Court also entered subsequent orders directing alternative service. *See* Text Order, dated Sep. 26, 2025; Text Order, dated Sep. 30, 2025. Plaintiffs complied with the Court's orders regarding alternative service for Ageyev. At bottom, Plaintiffs (1) affixed and mailed copies of the Summons and Complaint at the 35th Street Address; (2) mailed a copy of the Summons and Complaint to the 21st Street Address; (3) published a notice and the Summons once in each of four consecutive weeks in the Brooklyn Daily Eagle and the Canarsie Courier; and (4) emailed a copy of the Summons and Complaint to collections counsel for GVA Group. Dkt. No. 18 at 1-2. Alternative service, therefore, was appropriate and satisfied in the present action for Ageyev.

Accordingly, the undersigned respectfully recommends that Defaulting Defendants have been properly served in compliance with Rule 4 of the Federal Rules of Civil Procedure.

**B. Subject Matter Jurisdiction**

Federal district courts have original subject matter jurisdiction over all civil actions "arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. The district courts also have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," *inter alia*, "citizens of different States." 28 U.S.C. § 1332(a). Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims form "part of the same case or controversy" when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims

"substantially overlap[]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, this Court has federal question subject matter jurisdiction over Plaintiffs' claim arising under RICO, as this claim arises under federal law pursuant to 28 U.S.C. § 1331. Further, Plaintiffs assert that the Court has jurisdiction over the state law claims in this action because (1) "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states," and (2) the state claims form part of the same case or controversy as the RICO claim, supporting supplemental jurisdiction. Dkt. No. 1 ¶¶ 73, 74.

As to diversity jurisdiction, the Complaint alleges that Plaintiffs are incorporated in Illinois and their principal places of business are in Illinois. Dkt. No. 1 ¶¶ 62-65. Thus, they are citizens of Illinois for diversity purposes. *See* 28 U.S.C. § 1332(c)(1). GVA Group is incorporated in New York and has its principal place of business in New York. Dkt. No. 1 ¶ 69; Dkt. No. 27-6. Thus, GVA Group is a citizen of New York. The Complaint alleges that Ageyev resides in New York. Dkt. No. 1 ¶ 68. "'An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile,' and residence or place of employment alone are 'insufficient to establish domicile for jurisdictional purposes.'" *Lue v. JPMorgan Chase & Co.*, No. 21-892, 2022 WL 1146219, at *1 (2d Cir. Apr. 19, 2022) (quoting *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53-54 (2d Cir. 2019)). Because Plaintiffs alleged only where Ageyev resides, not where he is domiciled or where he is a citizen, complete diversity has not been adequately alleged.[6] *See Jacobs v. Pat. Enf't Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000) (holding that plaintiffs "failed adequately to allege diversity in their original complaint" because "they had alleged only the

[6] Indeed, Plaintiffs state that information obtained from the New York State Department of Motor Vehicles indicated that Ageyev's New York driver's license expired in 2011. Dkt. No. 27-3 ¶ 53. This information further supports an inference that Ageyev may not have been a citizen of New York when this action was initiated.

residence, and not the citizenship (or domicile), of the parties"). And even if Plaintiffs had properly alleged Ageyev's citizenship for diversity jurisdiction purposes, it is not clear that an amount in controversy over $75,000 has been properly alleged. The Complaint seeks compensatory damages "in excess of $53,000" on Plaintiffs' fraud and unjust enrichment claims. *See* Dkt. No. 1 ¶¶ 255, 259. Therefore, Plaintiffs have not properly invoked the Court's diversity jurisdiction as to the state law claims.

Nonetheless, Plaintiffs *have* demonstrated that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). *See* Dkt. No. 1 ¶ 74. The fraud and unjust enrichment claims derive from a common nucleus of operative fact with the RICO claims; namely, submission of the allegedly fraudulent claim forms and other documentation containing false representations. *See, e.g.*, *id.* ¶¶ 240, 248-49, 257. Therefore, the state law claims form part of the same case or controversy as the RICO claims such that the Court may exercise supplemental jurisdiction. *See Gov't Emps. Ins. Co. v. Binns*, No. 22-CV-1553 (NGG) (PK), 2024 WL 2112075, at *4 (E.D.N.Y. Mar. 14, 2024) (recommending that the Court has supplemental jurisdiction over plaintiffs' common law fraud and unjust enrichment claims, where plaintiffs also brought civil RICO and civil RICO conspiracy claims), *report and recommendation adopted*, 2024 WL 1433278 (E.D.N.Y. Apr. 3, 2024); *ABF Cap. Mgmt. v. Askin Cap. Mgmt., L.P.*, 957 F. Supp. 1308, 1322 (S.D.N.Y. 1997) (holding that "[p]laintiffs' state-law claims, which arise out of the same operative facts as their federal RICO claim, fall within this Court's supplemental jurisdiction").

Accordingly, the undersigned respectfully recommends that the Court exercise subject matter jurisdiction over Plaintiffs' claims.

### C. Personal Jurisdiction

The United States Court of Appeals for the Second Circuit has held that "a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010) (citation omitted). District courts within this Circuit have held that "[p]ersonal jurisdiction is 'a necessary prerequisite to entry of a default judgment.'" *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022) (adopting report and recommendation) (citation omitted). In an abundance of caution, the undersigned will analyze personal jurisdiction.

To properly exercise personal jurisdiction, three requirements must be met. *NLRB v. Universal Smart Conts., LLC*, 166 F.4th 304, 314 (2d Cir. 2026) (Sullivan, J.) (citations omitted). First, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* (citations omitted). Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.* (citation omitted). Finally, "the district court's assertion of personal jurisdiction must otherwise 'comport with constitutional due process principles.'" *Id.* (citation omitted).

As to the first requirement, as explained above, the undersigned has already respectfully recommended a finding that service on Defaulting Defendants was proper in this case. As to the second requirement, the available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k). *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci I*"), 673 F.3d 50, 59 (2d Cir. 2012). Rule 4(k)(1)(A) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci I*, 673 F.3d at 59 (citing Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, "[a] district court's personal jurisdiction is determined by the law of the

state in which the court is located." *Id.* (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). Thus, the court should look to New York law in determining the availability of personal jurisdiction over Defaulting Defendants.

"There are two types of personal jurisdiction: specific and general." *Monbo v. Nathan*, 623 F. Supp. 3d 56, 133 (E.D.N.Y. 2022) (Brodie, C.J.) (citation omitted). "General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum." *Id.* (citation omitted). "Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim." *Id.* (citation omitted). Under New York law, courts exercise general jurisdiction pursuant to C.P.L.R. § 301, and specific jurisdiction pursuant to § 302. *See Monbo*, 623 F. Supp. 3d at 133.

First, there is general jurisdiction over GVA Group. "CPLR § 301 permits courts to exercise 'such jurisdiction over persons, property, or status as might have been exercised heretofore.'" *Great Bowery, Inc. v. Royal Beauty Studio Inc.*, No. 25-CV-3627 (FB) (JAM), 2026 WL 1029641, at *7 (E.D.N.Y. Apr. 16, 2026) (adopting report and recommendation). The general jurisdiction of a corporate defendant is one in which "the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Great Bowery*, 2026 WL 1029641, at *7 (quoting *Monbo*, 623 F. Supp. 3d at 136-37). Regarding general jurisdiction for purposes of the Due Process Clause of the Fourteenth Amendment, the U.S. Supreme Court has held that, "[w]ith respect to a corporation, the place of incorporation and principal place of

business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted).

Here, as previously noted, GVA Group is a New York corporation with its principal place of business in New York. Accordingly, the Court may exercise general jurisdiction over GVA Group.

Second, as to Ageyev, as previously discussed, Plaintiffs have not set forth Ageyev's domicile, preventing the exercise of general jurisdiction as to him. The Supreme Court has held that, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's *domicile*." *Goodyear Dunlop Tires Operations*, 564 U.S. at 924 (emphasis added) (citation omitted). Domicile is different from residency, and one cannot infer one from the other. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (holding that owning an apartment in New York is insufficient to establish domicile for purposes of general jurisdiction and noting that "[o]ne may have more than one residence in different parts of this country or the world, but a person may have only one domicile" (citation omitted)); *N. Am. Co. for Life & Health Ins. v. Pouncey*, No. 3:23-CV-137 (SVN), 2024 WL 4037005, at *6 (D. Conn. Sep. 3, 2024) ("[A] statement of residence, unlike domicile, tells the court only where the parties are *living* and not of which state they are *citizens*.' A court may not and cannot simply infer the latter from the former." (internal quotation marks and citation omitted)), *report and recommendation adopted*, Dkt. No. 39 (D. Conn. Sep. 30, 2024). Because Plaintiffs have set forth insufficient allegations to demonstrate that Ageyev is subject to the Court's general personal jurisdiction, the undersigned turns to New York's long-arm statute to evaluate specific personal jurisdiction. *See Gilead Scis., Inc. v. Safe Chain Sols., LLC*, No. 21-CV-4106 (AMD) (RER), 2022 WL 22947596, at *5 (E.D.N.Y. Sep. 29, 2022) ("In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm

statute of the forum state." (quoting *Yak v. BiggerPockets, LLC*, No. 20-3498, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022))).

C.P.L.R. § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *Gilead Scis.*, 2022 WL 22947596, at *5 (quoting C.P.L.R. § 302(a)(1)). Accordingly, two requirements must be met to establish personal jurisdiction under § 302(a)(1): "(1) The defendant must have transacted business within the state [or contracted anywhere to supply goods or services in the state]; and (2) the claim asserted must arise from that business activity." *Id.* at *6 (quoting *Eades v. Kennedy, P.C. L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015)); *see also D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1175 (N.Y. 2017) (holding that courts should conduct a "twofold jurisdictional inquiry" under C.P.L.R. § 302(a)(1): "[f]irst, the defendant must have purposefully availed itself of 'the privilege of conducting activities within the forum state' by either transacting business in New York or contracting to supply goods or services in New York," and "[s]econd, the claim must arise from that business transaction or from the contract to supply goods or services" (citation omitted)). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Gilead Scis.*, 2022 WL 22947596, at *6 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)); *see also New York v. Vayu, Inc.*, 206 N.E.3d 1236, 1240 (N.Y. 2023) ("CPLR 302 is a single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." (citations omitted)).

Here, the Court may exercise specific jurisdiction over Ageyev because he transacted business in New York as the "principal, officer, and/or director of GVA Group," a New York corporation, and "operated, managed, and/or controlled [GVA Group's] activities." Dkt. No. 1 ¶ 68. Furthermore, the Complaint alleges that Ageyev "incorporated, owned and/or controlled GVA Group for the purpose of defrauding insurers, in general, and Plaintiffs, in particular." *Id.* ¶ 106. Ageyev's conduct as "principal, officer, and/or director of GVA Group," by which he engaged in actions in New York in furtherance of the alleged scheme, gave rise to Plaintiffs' claims. *See id.* ¶¶ 4-16. Thus, Plaintiffs' claims arise from that business activity which Ageyev conducted in New York.

Last, the Court must determine whether the exercise of specific jurisdiction comports with federal constitutional requirements of due process. *See Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 330-31 (S.D.N.Y. 2025). "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 330 (citation omitted). First, a court evaluates whether a defendant has "sufficient minimum contacts" with the forum, and second, whether, in light of various factors, the exercise of jurisdiction would "comport with fair play and substantial justice." *Id.* at 330-31 (citations omitted).

Regarding the minimum contacts, "[g]enerally, if a defendant meets the contacts requirement under the long-arm statute, it also meets the minimum contacts requirements under the constitutional analysis." *Id.* at 331 (citing *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024)). As discussed above, Ageyev meets the minimum contacts requirements under New York's long-arm statute, C.P.L.R. § 302(a)(1), due to his various contacts with New York, and, thus, Ageyev satisfies the minimum contacts requirements under the constitutional analysis.

As to fair play and substantial justice, the Court considers the following factors:

> [i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies.

*Dow Jones & Co.*, 797 F. Supp. 3d at 331 (citation omitted); *see also Agric. Logistics LLC v. Survival Transp. Inc.*, No. 22-CV-873 (MKB) (JMW), 2024 WL 4250354, at *8 (E.D.N.Y Aug. 7, 2024) (listing same factors), *report and recommendation adopted*, 2024 WL 4116684 (E.D.N.Y. Sep. 9, 2024).

As an initial matter, the Second Circuit recognized that it would be "rare" and "unusual" for the exercise of specific jurisdiction to "offend traditional notions of fair play and substantial justice" where a defendant transacted business in New York and the asserted claim arose from that business activity under C.P.L.R. § 302(a)(1). *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 732 F.3d 161, 170 (2d Cir. 2013) (citations omitted). Furthermore, Defaulting Defendants cannot present any compelling case that would render jurisdiction unreasonable. *See Agric. Logistics*, 2024 WL 4250354, at *8 (stating that, "given Defendants' default, [the Court] has not been provided, nor does it find, any reason why exercise of specific jurisdiction would be unreasonable").

In any event, the factors as to fair play and substantial justice weigh in favor of the exercise of specific jurisdiction over Ageyev here. First, the burden of the Court's jurisdiction on Ageyev is low because he is a resident of New York. *See* Dkt. No. 1 ¶ 68; *see also Agric. Logistics*, 2024 WL 4250354, at *8 (noting that "the burden on Defendant, if any, to litigate here does not weigh strongly in its favor because 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago'" (citation omitted)).

Second, "New York has a strong interest in adjudicating cases involving alleged RICO violations and fraud that occurred in New York, at least in part," *Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, No. 22-CV-5055 (ER), 2025 WL 1003964, at *16 (S.D.N.Y. Mar. 31, 2025) (citing *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516 (S.D.N.Y. 2016)), and where the core allegations are against a New York resident. *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *17 (S.D.N.Y. June 22, 2020).

Third, Plaintiffs have a significant interest in obtaining convenient and effective relief. *See Henao v. Parts Auth.*, 557 F. Supp. 3d 490, 498 (S.D.N.Y. 2021) ("Plaintiffs have significant interest in obtaining convenient and effective relief, which would be inefficient if they are required to sue Parts Authority in New York and Browne in a separate forum.").

The final two factors are neutral because New York has an interest in the efficient resolution of controversies which arise under federal law, and New York has a shared interest in further developing the substantive social policies. *See Dow Jones & Co.*, 797 F. Supp. 3d at 332. Thus, due process considerations are satisfied because Ageyev has minimum contacts with New York such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See id.* at 330-32.

Furthermore, "[w]hile courts 'generally look first to the jurisdictional rules of the forum state' to determine personal jurisdiction, 'the RICO statute contains a separate jurisdictional provision.'" *Gilead Scis.*, 2022 WL 22947596, at *10 (quoting *Milton v. Wazed*, No. 16-CV-4542 (MKB) (JO), 2018 WL 2074179, at *8 (E.D.N.Y. Mar. 30, 2018)). Because Plaintiffs bring a RICO claim against Ageyev (Dkt. No. 1 ¶¶ 231-45), the Court also looks to RICO's jurisdictional provision. "RICO's jurisdictional provision, 18 U.S.C. § 1965(a), 'does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant

is found,'" but, rather, it "grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs." *Gilead Scis.*, 2022 WL 22947596, at *10 (quoting *Pincione v. D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012)); *see also* 18 U.S.C. § 1965(a) ("Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."). "That is, personal jurisdiction over the defendant requires the 'minimum contacts' test to be met for at least one defendant." *City of New York v. Old Dominion Tobacco Co., Inc.*, No. 20-CV-5965 (ENV) (RER), 2023 WL 12027901, at *6 (E.D.N.Y. Aug. 30, 2023) (first citing *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314 (S.D.N.Y. 2010); and then citing *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)); *see also Corso v. Franz*, No. 16-CV-2384 (FB) (SMG), 2018 WL 1513639, at *2 & n.1 (E.D.N.Y. Mar. 27, 2018) (noting that RICO permits the exercise of personal jurisdiction where minimum contacts are established (citations omitted)). For the reasons stated above, Plaintiffs have established Ageyev's minimum contacts with New York, and, thus, the Court has jurisdiction to consider the RICO claim against Ageyev. *See, e.g.*, *Gilead Scis.*, 2022 WL 22947596, at *10 (explaining that "the Court has jurisdiction over the defendant under Section 302(a)(1) and has jurisdiction for the same reasons under Section 1965(a)"); *Old Dominion Tobacco Co.*, 2023 WL 12027901, at *6 (holding that defendant established defendant's minimum contacts with New York and the court has jurisdiction over the RICO claim).

Accordingly, the undersigned respectfully recommends that the Court may exercise personal jurisdiction over Defaulting Defendants.

**D. Venue**

A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, venue is proper in this District because Defaulting Defendants entered into arrangements with No-Fault Clinics in this District, including in Kings County and Queens County, to execute the scheme to defraud. *See* Dkt. No. 1 ¶ 4; *see also id.* ¶ 76 (stating that venue is proper because "the Eastern District of New York is the district where a substantial amount of the activities forming the basis of the Complaint occurred").

Accordingly, the undersigned respectfully recommends that venue is proper in this District.

## III. Procedural Compliance with Federal Rules and Local Civil Rules

"A motion for default judgment will not be granted unless the party making the motion adheres to *all* of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Atweek, Inc.*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) (citation omitted).

Local Civil Rule 55.2 provides, in relevant part,

> (a) In addition to following the applicable procedures in either (b) or (c) below, any party seeking a default judgment must file:
>
> (1) an affidavit or declaration showing that:
>
> (A) the clerk has entered default under Local Civil Rule 55.1;
>
> (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and

> > (C) the party against whom judgment is sought is not known to be a minor or an incompetent person . . . . .
>
> (2) if proceeding by motion, the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order detailing the proposed judgment to be entered; and
>
> (3) a certificate of service stating that all documents in support of the request for default judgment, including the "Clerk's Certificate of Default" and any papers required by this rule, have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought.
>
> . . .
>
> (c) By the Court (available under Fed. R. Civ. P. 55(b)(2)). In addition to the matters required in section (a), above, the party must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs.

Loc. Civ. R. 55.2.

Here, Plaintiffs properly obtained the certificate of default against Defaulting Defendants under Local Civil Rule 55.2(a)(1)(A). *See* Dkt. Nos. 24, 25.

As to Local Civil Rule 55.2(a)(1)(B), Plaintiffs have satisfied the requirements of the Servicemembers Civil Relief Act ("SCRA"). GVA Group is a corporate entity such that the SCRA requirement does not apply to them. S*ee Loc. 1992 Pension Fund v. All Serv. Equip. Corp.*, No. 22-CV-2522 (HG) (JMW), 2023 WL 11868244, at *3 (E.D.N.Y. July 28, 2023) (noting that the SCRA's affidavit requirement does not apply to corporate defendants), *report and recommendation adopted*, Text Order, dated Aug. 18, 2023. As for Ageyev, Plaintiffs filed a report from the Department of Defense Manpower Data Center—an entity that hosts the SCRA verification website—certifying that Ageyev was not in active military service as of the filing of Plaintiffs' motion. *See* Dkt. No. 27-3 ¶ 50; Dkt. No. 27-13; *see also Wilmington Savs. Fund Soc'y FSB v. Fernandez*, 712 F. Supp. 3d 324, 333 (E.D.N.Y. 2024) (holding that "[a]dequate proof might consist of a report from the Department of Defense's website obtained after the defendant's default

certifying that the defendant is not in active military service" (citation omitted)); *ADI Glob. Distrib. v. Green*, No. 20-CV-3869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) ("Certification . . . of a defendant's military status [under 50 U.S.C. § 3931(A)] can be obtained from the Department of Defense's Servicemembers Civil Relief Act website." (citation omitted)), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 9, 2023).

Per Local Civil Rule 55.2(a)(1)(C), no Defaulting Defendant is a minor or an incompetent person. *See* Dkt. No. 27-3 ¶¶ 51-52, 54.

Next, Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default judgment: (1) a notice of motion specifying the applicable rules or statutes pursuant to which the motion is brought and specifying the relief sought; (2) a memorandum of law setting forth the cases and other authorities relied upon in support of the motion; (3) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion; and (4) a certificate of compliance with the word count requirements of Local Civil Rule 7.1(c). *See* Loc. Civ. R. 7.1(a), (c). Local Civil Rule 55.2(a)(2) also requires a proposed order detailing the proposed judgment to be entered. Loc. Civ. R. 55.2(a)(2). Plaintiffs complied with the procedural requirements of Local Civil Rule 7.1(a) by filing a notice of motion (Dkt. No. 27), a memorandum of law (Dkt. No. 27-1), and declaration and exhibits in support of the motion (Dkt. Nos. 27-2, 27-3, 27-5 – 27-19). Plaintiffs also filed a proposed order detailing the proposed judgment to be entered in compliance with Local Civil Rule 55.2(a)(2). Dkt. No. 27-4.[7] Plaintiffs, however, failed to include a page count certification statement in their memorandum of law as required by Local Civil Rule 7.1(c). The undersigned respectfully recommends that the word count

[7] Plaintiffs appear to have included a typographical error in its proposed judgment, substituting "Zenith Medical Supply Corp." for GVA Group in one paragraph of the proposed judgment. *See* Dkt. No. 27-4 at 2. The Court excuses such scrivener's error.

certification requirement be waived because the omission is not material to the relief sought. *See Great Bowery,* 2026 WL 1029641, at *9 n.6 (excusing the word count certification); *see also Andy Ryan Photographer, LLC v. City Visa, Inc.*, No. 24-CV-3369 (OEM) (JAM), 2025 WL 2778372, at *5 n.3 (E.D.N.Y. Sep. 30, 2025) (same), *report and recommendation adopted*, Text Order, dated Oct. 20, 2025. In any event, on February 10, 2026, the Court granted Plaintiffs leave to enlarge the page limit of their memorandum of law to forty pages. Text Order, dated Feb. 10, 2026. Thus, Plaintiffs complied with Local Civil Rules 7.1 and 55.2(a)(2).

Pursuant to Local Civil Rule 55.2(a)(3), Plaintiffs filed a certificate of service stating that all documents in support of the request for default judgment, including the "Clerk's Certificate of Default" and any papers required by this rule, have been mailed to Defaulting Defendants' last known addresses. *See* Dkt. No. 28.

Finally, Plaintiffs have filed sufficient documentation to fulfill Local Rule 55.2(c)'s requirement to "file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, . . . showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." Loc. Civ. R. 55.2(c). Plaintiffs filed the Declaration of Oren Kutnowsky, an Analyst in the Special Investigations Unit of Plaintiff Allstate Insurance Company, which sets forth, *inter alia*, the damages sustained by Plaintiffs. *See* Dkt. No. 27-2. Kutnowsky "assisted with and was involved in [Plaintiffs'] identification and investigation of the Defaulted Defendants in this action." *Id.* ¶ 2.

Accordingly, the undersigned respectfully recommends that the Court find that Plaintiffs have satisfied Local Civil Rules 7.1 and 55.2.

## IV. <u>Entry of Default Judgment</u>

As the Second Circuit has explained,

> Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain an entry of default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention. In such circumstances Rule 55(a) empowers the clerk of court to enter a default. The next step requires the plaintiff to seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear. In all other cases Rule 55(b)(2) governs. It requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

*Priestley v. Headminder*, *Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). To "enter or effectuate judgment," a court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018). The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993) (citation omitted). "Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages." *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *2 (E.D.N.Y. Dec. 22, 2023) (first citing *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); and then citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)), *report and recommendation adopted*, Text Order, dated Jan. 9, 2024. The plaintiff bears the burden of alleging "*specific* facts," rather than "mere 'labels and conclusions' or a 'formulaic recitation of

the elements,'" so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sep. 1, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sep. 21, 2015).

The decision to grant or deny a motion for default judgment is "left to the sound discretion of a district court." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sep. 29, 2023) (quoting *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)), *report and recommendation adopted*, Text Order, dated Nov. 30, 2023. "A court 'possesses significant discretion' in granting a motion for default judgment, 'including [determining] whether the grounds for default are clearly established.'" *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (adopting report and recommendation) (citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved . . . and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sep. 17, 2010).

As the Second Circuit has observed, "[t]hese widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil*, 10 F.3d at 96 (citations omitted); *see also Trico Tarek Factory v. Jetax Inc.*, Nos. 24-CV-3731 (JMA) (ST), 24-CV-2409 (ST), 2025 WL 2625376, at *29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether

*granting* a default judgment is warranted in the first instance." (citing *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54-61 (E.D.N.Y. 2022))), *report and recommendation adopted*, No. 24-CV-3731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sep. 30, 2025). "Willfulness 'is the most significant factor' but is not dispositive." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (first quoting *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 n.4 (2d Cir. 2024); and then citing *W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69-70 (2d Cir. 2013)); *see also Grp. One*, 625 F. Supp. 3d at 55 ("However, in neither case did the court find default judgment appropriate based solely on willfulness."). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96 (citation omitted).

Here, as to the first factor, Defaulting Defendants' failure to respond to the Complaint demonstrates the willfulness of their default. "'[W]illfulness,' in the context of a default, . . . refer[s] to conduct that is more than merely negligent or careless," but is instead "egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted). As described above, Defaulting Defendants were properly served with the Complaint. Notwithstanding that service, Defaulting Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *6 (E.D.N.Y. Sep. 16, 2014) (adopting report and recommendation, and holding that defendant's failure to appear demonstrated willfulness of default); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y.

Mar. 23, 2015) (adopting report and recommendation, and holding that "[d]efendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness" (citations omitted)). Although Plaintiffs have repeatedly served Defaulting Defendants with filings throughout this case, *see, e.g.*, Dkt. Nos. 22-4, 23-5, Defaulting Defendants have consistently failed to respond or appear. Such disregard for the Court and the present litigation militate in favor of the first factor being satisfied.

As to the second factor, the Second Circuit has held that "[w]hether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *In re Orion HealthCorp*, 95 F.4th at 105 (quoting *Enron Oil*, 10 F.3d at 98). The Court cannot conclude that Defaulting Defendants have a meritorious defense to the allegations in the Complaint because Defendants did not appear in this case to proffer any defenses. *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *3 (E.D.N.Y. Jan. 3, 2019) ("[T]he Court cannot conclude there is any meritorious defense to the allegations because [the defendant] did not appear nor present evidence of such a defense."), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019). This factor therefore weighs in favor of entering default judgment because the allegations in Plaintiffs' Complaint are deemed admitted. *See Sola Franchise*, 2015 WL 1299259, at *6 ("Here, Defendant has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiffs' Complaint are deemed admitted." (citation omitted)).

As to the third factor, the Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice. Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery or provide greater opportunity for fraud and collusion."

*Henry*, 108 F.4th at 52-53 (citations omitted). Here, Plaintiffs will suffer prejudice if their motion is denied because without the entry of default judgment, Plaintiffs could be left without the ability to recover against Defaulting Defendants for the claims set forth in the Complaint. *See Grp. One*, 625 F. Supp. 3d at 60 ("Plaintiff will suffer prejudice if its motion is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint." (citation omitted)); *Sola Franchise*, 2015 WL 1299259, at *15 ("[D]enying this motion would be prejudicial to Plaintiffs 'as there are no additional steps available to secure relief in this Court.'" (citation omitted)).

Therefore, the undersigned respectfully recommends that all three factors permit entry of default judgment against Defaulting Defendants. The Court next turns to evaluating liability and damages.

## V. <u>Liability</u>

As discussed above, Plaintiffs move for default judgment on their claims of (1) a pattern of racketeering activity in violation of 18 U.S.C. § 1964(c) against Ageyev; (2) common law fraud against Ageyev and GVA Group; and (3) unjust enrichment against Ageyev and GVA Group. *See* Dkt. No. 27-1 at 18-35. As noted above, "[i]n the context of a motion for default judgment, a court should accept the well-pleaded allegations of a complaint pertaining to liability as true." *Janssen Scis. Ir. Unlimited Co. v. Safe Chain Sols., LLC*, No. 22-CV-1983 (BMC), 2025 WL 3640661, at *1 (E.D.N.Y. Dec. 16, 2025) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158); *see also Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) ("In reviewing a default judgment, we generally 'deem[] all the well-pleaded allegations [as to liability] in the pleadings to be admitted.'" (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997)); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the

amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

The undersigned addresses liability as to each of Plaintiffs' claims below.

### A. RICO Claim Against Ageyev

#### 1. Legal Standard

"To establish civil liability under RICO, a plaintiff must show a 'substantive RICO violation under 18 U.S.C. § 1962,' and that the plaintiff suffered damages as a result." *Allstate Ins. Co. v. Maccabi Pharm. Rx Inc.*, No. 24-CV-6214 (CBA) (RML), 2026 WL 794231, at *4 (E.D.N.Y. Mar. 2, 2026) (citations omitted), *report and recommendation adopted*, 2026 WL 792509 (E.D.N.Y. Mar. 20, 2026). As is relevant here, RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

To demonstrate a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see also Maccabi Pharm.*, 2026 WL 794231, at *5 (listing the elements of a § 1962(c) claim (quoting *Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611 (JG) (JMA), 2012 WL 1427796, at *7 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012))). Under RICO, a

"'person' includes any individual or entity capable of holding a legal or beneficial interest in property;" and an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(3), (4). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, . . . the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* § 1961(5).

"Racketeering includes 'mail fraud' as defined by 18 U.S.C. § 1341 to encompass using interstate mails for a scheme to defraud." *Maccabi Pharm.*, 2026 WL 794231, at *5 (citing *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187 (PKC) (VMS), 2015 WL 5774459, at *12 (E.D.N.Y. Sep. 30, 2015) (adopting report and recommendation)); *see also* 18 U.S.C. § 1961(1) ("'[R]acketeering activity' means . . . any act which is indictable under . . . section 1341 (relating to mail fraud)" of title 18 of the United States Code.). "The elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires." *Williams*, 889 F.3d at 124 (first quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000); and then citing 18 U.S.C. §§ 1341, 1343). "The gravamen of the offense is the scheme to defraud." *Id.* (quoting *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 657 (2d Cir. 2016)). "A 'scheme to defraud' is 'a plan to deprive a person of something of value by trick, deceit, chicane or overreaching.'" *Id.* (quoting *Autuori*, 212 F.3d at 115). "To make out such a scheme, a plaintiff must provide proof of a material misrepresentation." *Id.* (citing *Neder v. United States*, 527 U.S. 1, 25 (1999)). To sufficiently allege the "use of interstate mails," Plaintiffs "need not allege that each defendant sent a piece of mail; rather, 'it need only be shown that [each defendant] acted with knowledge that the use of the mails will follow in the ordinary course of

business, or that such use can reasonably be foreseen, even though not actually intended.'" *Maccabi Pharm.*, 2026 WL 794231, at *5 (quoting *Nazarov*, 2015 WL 5774459, at *12).

"The predicate acts must be related, and either amount to or pose a threat of continuing criminal activity." *Id.* (quoting *Nazarov*, 2015 WL 5774459, at *13). The continuity requirement may be satisfied "either by showing a closed-ended pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an open-ended pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.* (quoting *Nazarov*, 2015 WL 5774459, at *13). "A closed-ended pattern generally requires that the predicate acts span at least two years." *Id.* (first citing *Gov't Emps. Ins. Co. v. Scheer*, No. 13-CV-4039 (SLT) (SMG), 2014 WL 4966150, at *7 (E.D.N.Y. Aug. 18, 2014) (for purposes of default judgment, finding a closed-ended pattern where the enterprise "submitted bills for reimbursement to which it was not entitled over a period exceeding two years"), *report and recommendation adopted*, 2014 WL 4966137 (E.D.N.Y. Sep. 30, 2014); and then citing *Allstate Ins. Co. v. Smirnov*, No. 12-CV-1246 (CBA) (SMG), 2013 WL 5407224, at *8 (E.D.N.Y. Aug. 21, 2013) (finding RICO liability where the defendants submitted bills for reimbursement to which they were not entitled over periods exceeding two years), *report and recommendation adopted*, Dkt. No. 197 (E.D.N.Y. Sep. 25, 2013)).

Because the Complaint here alleges mail fraud as a predicate act, "the allegations are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Brodie v. Rower*, No. 25-CV-103 (ALC), 2026 WL 880345, at *5 (S.D.N.Y. Mar. 31, 2026) (citation omitted); *see also Williams*, 889 F.3d at 124-25 ("The elements of mail and wire fraud must be pled with particularity. The complaint must detail the specific statements that are

false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." (citations omitted)).

"'Given the powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO,' which allows for treble damages, 'courts must scrutinize civil RICO claims . . . to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" *Maccabi Pharm.*, 2026 WL 794231, at *4 (quoting *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020)).

**2. Analysis**

Plaintiffs adequately plead that Ageyev is liable for a RICO violation pursuant to 18 U.S.C. § 1962(c). The undersigned examines each RICO element below.

**a. The RICO Person and RICO Enterprise**

The Complaint alleges that Ageyev is a natural person and liable under RICO. *See* Dkt. No. 1 ¶ 68; Dkt. No. 27-1 at 19. The Complaint also alleges that GVA Group is a corporation that constitutes an enterprise affecting interstate commerce. *See* Dkt. No. 1 ¶¶ 69, 232; Dkt. No. 27-1 at 20-22. The Complaint further alleges that Ageyev "operated, managed, and/or controlled" GVA Group. *See* Dkt. No. 1 ¶¶ 69, 99, 234.

Furthermore, the enterprise must exist "separate and apart from the pattern of activity in which it engages." *Allstate Ins. Co. v. New Century Pharm. Inc.*, No. 19-CV-5702 (ENV) (VMS), 2021 WL 7830141, at *9 (E.D.N.Y. Aug. 13, 2021) (first quoting *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 667 (2d Cir. 2014); and then citing *Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826 (JS) (AKT), 2018 WL 1767873, at *8 (E.D.N.Y. Feb. 15, 2018) ("The alleged enterprise through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity."), *report and*

*recommendation adopted*, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018)), *report and recommendation adopted*, Text Order, dated Mar. 24, 2022. "This requirement is met by demonstrating that a 'formal legal distinction' exists between the individual defendants and the RICO enterprise." *Id.* (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001)). "Where the alleged enterprises are corporations and the individual defendants are natural persons, the person-enterprise distinction is met." *Id.* (citing *Palatkevich v. Choupak*, No. 12-CV-1682 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("[A] *natural person* named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met.")).

Here, because Ageyev—the party whom Plaintiffs seek to hold liable under RICO—is a natural person, and the alleged enterprise—GVA Group—is a corporation, the required person-enterprise distinction is met. *See, e.g.*, *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD) (SJB), 2020 WL 1172697, at *6-7 (E.D.N.Y. Feb. 21, 2020) (stating that the distinctiveness requirement for RICO claims is met where "none of the RICO Defaulting Defendants is alleged to be a RICO enterprise"), *report and recommendation adopted*, 2020 WL 1166498 (E.D.N.Y. Mar. 11, 2020); *Allstate Ins. Co. v. Abutova*, No. 13-CV-3494 (ARR) (LB), 2017 WL 1185222, at *4 (E.D.N.Y. Feb. 15, 2017) ("Since these allegations must be accepted as true in the context of a default judgment, courts have held that this degree of specificity in pleading is sufficient to satisfy the distinctiveness requirement under RICO, when alleged in the context of a no-fault billing insurance case." (quoting *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423 (JBW) (CLP), 2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted*, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016))), *report and recommendation adopted*, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017).

Accordingly, the first and sixth elements of a RICO cause of action have been adequately alleged.

**b. Participation in a Pattern of Racketeering Activity**

Plaintiffs allege that, beginning in 2021, Ageyev engaged in racketeering acts on a "continued basis" as part of his ongoing scheme to "fraudulently bill for DME and/or orthotic devices to defraud insurers." Dkt. No. 1 ¶¶ 69, 105, 233, 237. "Through the GVA Group enterprise, Defendant Ageyev submitted numerous . . . fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous of Covered Persons as billed." *Id.* ¶ 240. Plaintiffs detail the mechanics of the scheme to defraud. *See id.* ¶¶ 105-52. Plaintiffs allege the ways in which Ageyev fraudulently billed for custom fabricated or custom fit DME and/or orthotic devices, cervical traction equipment, and DME and/or orthotic devices that were not actually provided, and mis-used fee schedule codes. *See id.* ¶¶ 153-227. Plaintiffs also provide further specific allegations regarding a "representative sample of predicate acts" in an appendix attached to the Complaint, which "identifies the nature and date of mailings that were made by Defendant Ageyev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings." *Id.* ¶ 241; *see also* Dkt. No. 1-3. Further, Plaintiffs allege that the "bills and supporting documents that were sent by Defendant Ageyev, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service." Dkt. No. 1 ¶ 240. Plaintiffs also contend that they suffered "injur[y] in their business and property and have been damaged in the aggregate amount presently in excess of $53,000.00, the exact amount to be determined at trial." *Id.* ¶ 244.

In short, the factual allegations in the Complaint are sufficient to demonstrate that Ageyev engaged in two or more acts that constitute a pattern of mail fraud in which Ageyev, via GVA

Group, repeatedly used the U.S. Mail to submit fraudulent claims between at least 2021 and 2023, and that Plaintiffs suffered significant monetary damages caused by Ageyev's conduct in that Ageyev's repeated submission of fraudulent no-fault claims caused Plaintiffs, reasonably relying on the false documentation, to make payments on those claims. *See, e.g.*, *New Century Pharm.*, 2021 WL 7830141, at *10 (finding that plaintiffs pled sufficient facts to establish a pattern of racketeering activity under RICO where defendants participated in a large-scale scheme repeatedly using the U.S. Mail to submit fraudulent claims containing charges for drugs, medications, treatments, tests, and services that were medically unnecessary over at least two years, and plaintiffs described the specific circumstances of the fraudulent scheme and their significant monetary damages); *Abramov*, 2020 WL 1172697, at *8 (finding that plaintiffs pled sufficient facts to establish a pattern of racketeering activity under RICO where plaintiffs alleged how defendants mailed thousands of fraudulent insurance claims over periods of time ranging from three to fifteen years); *Abutova*, 2017 WL 1185222, at *6 (finding that plaintiffs established that defendants participated in a pattern of racketeering activity where they alleged specific facts showing that the defendants engaged in two or more acts of mail fraud by mailing fraudulent invoices between the Retail defendants and the Wholesale defendants).

Accordingly, elements two through five of a RICO cause of action have been adequately alleged.

**c. Activities Affecting Interstate Commerce**

"The law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce." *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (citation omitted); *see also Abramov*, 2020 WL 1172697, at *8 ("[P]laintiffs need only show a minimal effect on interstate commerce." (quoting *Abutova*, 2017 WL 1185222, at *6)). Here, Plaintiffs

have alleged a fraudulent scheme involving national insurance companies and the mailing and cashing of checks obtained through falsely inflated invoices. *See, e.g.*, Dkt. No. 1 ¶¶ 50, 62-65, 84, 101, 239. "Such facts are sufficient to meet the interstate commerce requirement." *Abramov*, 2020 WL 1172697, at *8 (citing *Afanasyev*, 2016 WL 1156769, at *10 (collecting cases, and noting that "[s]everal courts have found that identical facts are sufficient to establish the necessary impact on interstate commerce")).

Accordingly, Plaintiffs have properly pled the seventh, and final, element of a civil RICO claim.

***

The undersigned respectfully recommends that the Court find that Plaintiffs have adequately stated a RICO claim against Ageyev.

While the Complaint also brings RICO claims against the John Doe Defendants, as set forth in Plaintiffs' June 23, 2026 letter, Plaintiffs state that they intend to voluntarily dismiss, without prejudice, all claims against the John Doe Defendants upon the Court's granting of their motion for default judgment, in whole or in part. Dkt. No. 30. The undersigned, therefore, respectfully recommends that the John Doe Defendants be dismissed from this action without prejudice.

**B. New York State Common Law Fraud Claim Against Ageyev and GVA Group**

**1. Legal Standard**

To state a common law fraud claim under New York law, "a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783

F.3d 395, 402 (2d Cir. 2015) (first citing *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir.2006); and then citing *Wynn v. AC Rochester,* 273 F.3d 153, 156 (2d Cir.2001) (per curium)); *see also Maccabi Pharm.*, 2026 WL 794231, at *8 (stating the elements of a New York common law fraud claim as: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff" (quoting *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011))). A common law fraud claim, like Plaintiffs' RICO claim, is subject to the particularity pleading requirements of Rule 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins.*, 783 F.3d at 402-03 (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs still must allege facts that "give rise to a strong inference of fraudulent intent" either "(a) by alleging facts to show the defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB) (RER), 2022 WL 772737, at *7 (E.D.N.Y. Feb. 23, 2022) (first quoting *Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720 (CBA) (VMS), 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation); and then citing *Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*, No. 10-CV-4341 (ILG) (RML), 2011 WL 5507426, at *8 n.11 (E.D.N.Y. Nov. 9, 2011)), *report and recommendation adopted*, 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022). "The intent prong of common law fraud is established 'when

it is clear that a scheme, viewed broadly, is necessarily going to injure.'" *Id.* (quoting *Scheer*, 2014 WL 4966150, at *6).

### 2. Analysis

Plaintiffs adequately plead that Ageyev and GVA Group are liable for fraud.

First, Plaintiffs allege that Defaulting Defendants "made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment," and that "[e]ach and every bill and supporting documentation submitted by [Defaulting Defendants] to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to Covered Persons." Dkt. No. 1 ¶¶ 247-48. Plaintiffs allege that documents submitted to them by Defaulting Defendants contained: (1) "[f]alse and misleading statements as to the nature, quality, and cost of the DME and/or orthotic devices purportedly supplied to Covered Persons;" (2) "[f]alse and misleading statements as to the amounts GVA Group was entitled to be reimbursed under the No-fault Law;" (3) "[w]ith respect to Fee Schedule items, false and misleading statements . . . that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the Covered Persons;" (4) "[w]ith respect to Non-Fee Schedule items, false and misleading statements . . . misrepresenting that the charges for the DME and/or orthotic devices did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;" (5) "[f]alse and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to Covered Persons, generically describing the item to conceal the type of item being prescribed;" and/or (6) "[f]alse and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the (a) DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby" medically unnecessary DME and/or orthotic devices

were prescribed; "(b) DME and/or orthotic devices were not covered by the . . . Fee Schedule; and (c) DME and/or orthotic devices were generically described on the prescriptions, all of which was designed to permit [Defaulting Defendants] to manipulate the payment formulas and their claims submissions in order to maximize the charges" submitted to Plaintiffs. *Id.* ¶ 249. Plaintiffs further allege that Defaulting Defendants knew that these material misrepresentations were false. *Id.* ¶ 251.

The Complaint also contains specific examples in a "Compendium of Exhibits" and appendix incorporated into the Complaint. *See* Dkt. Nos. 1-3, 1-4. These documents detail representative samples of claims submitted by Defendants and identify "the specific misrepresentations identified for each of the mailings." Dkt. No. 1 ¶¶ 241, 250. Several courts have held that these documents, attached to the Complaint, are sufficient to identify with particularly the requirements of Rule 9(b). *See Elmwood Park Med. Grp.*, 2022 WL 772737, at *7 (holding that plaintiff's "allegations and the supporting charts are sufficient to establish with particularity the first element of common law fraud" where, "[i]n addition to describing the scheme generally, [plaintiff] provides detailed charts listing a representative sample of the charges that the Defaulting Defendants submitted or caused to be submitted to [plaintiff], the date [plaintiff] received each submission, and the claim numbers that correspond with each submission" (collecting cases)); *New Century Pharm.*, 2021 WL 7830141, at *5 (finding that plaintiffs met Rule 9(b) standard for common law fraud where "[t]he complaint attaches as exhibits a chart that lists claims submitted by [defendant] under allegedly fraudulent [Current Procedural Terminology] codes, as well as lists of allegedly fraudulent No-Fault claims paid out by Allstate to" defendants (citations omitted)); *Abramov*, 2020 WL 1172697, at *10 ("The Claims Charts—which contain statements or claims made by each of the Fraud Defaulting Defendants and when those claims

were made—are sufficient to meet this standard" under Rule 9(b). (collecting cases)). Accordingly, Plaintiffs' allegations and their supporting documents are sufficient to establish with particularity the first element of common law fraud.

Second, Plaintiffs have sufficiently alleged the knowledge and scienter elements. Plaintiffs contend that Defaulting Defendants "intended to defraud Plaintiffs" by making these false representations, and that Defaulting Defendants "knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon." Dkt. No. 1 ¶¶ 248, 251. Further, Plaintiffs allege that Defaulting Defendants "intended to deceive and mislead Plaintiffs into paying [Defaulting Defendants'] claims under the No-fault Law." *Id.* ¶ 250. Plaintiffs also allege that Defaulting Defendants' scheme was "motivated by money." *Id.* ¶ 54. These allegations are sufficient to set forth the second and third elements of common law fraud. *See, e.g.*, *Elmwood Park Med. Grp.*, 2022 WL 772737, at *8 (finding the knowledge and intent to defraud elements satisfied where plaintiff "avers in detail that the Defaulting Defendants knew that the claims they submitted were fraudulent, and that the submissions were made as part of an intentional scheme to defraud the insurer" (citation omitted)); *Allstate Ins. Co. v. Avetisyan*, No. 17-CV-4275 (RPK) (RML), 2021 WL 1227625, at *6 (E.D.N.Y. Mar. 5, 2021) (finding that the Amended Complaint alleged that the defendants "had both motive and opportunity for the fraud: they each had strong motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims to plaintiffs" (citations omitted)), *report and recommendation adopted*, 2021 WL 1224101 (E.D.N.Y. Mar. 31, 2021); *Abutova*, 2017 WL 1185222, at *7 (finding that the intent element was adequately alleged where

plaintiffs alleged that defendants "established a process to submit false claims and invoices in an attempt to obtain undeserved and inflated payments from [plaintiffs]").

Finally, the fourth and fifth elements of fraud have also been adequately pled. "A plaintiff's reliance on intentionally fraudulent statements is reasonable without further investigation when 'matters are held to be peculiarly within defendant's knowledge, as plaintiff has no independent means of ascertaining the truth.'" *Elmwood Park Med. Grp.*, 2022 WL 772737, at *8 (quoting *Scheer*, 2014 WL 4966150, at *6). "In the context of insurance fraud schemes, courts in this district regularly find that [i]nsurance companies are permitted to rely on facially valid insurance reimbursement claims." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiffs allege that Defaulting Defendants represented that the claims were facially valid, and that, "[t]o fulfill its obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by GVA Group in support of its claims, and paid GVA Group based on the representations and information contained in the bills and documentation that Defendants mailed to Plaintiffs." Dkt. No. 1 ¶¶ 82, 84. Furthermore, Plaintiffs allege that the "documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent concealment described [in the Complaint], were designed to, and did cause Plaintiffs to justifiably rely on them," and that, as "a proximate result, Plaintiffs have incurred damages of more than $53,000.00 based upon the fraudulent bill submissions." *Id.* ¶ 229.

Accordingly, Plaintiffs have sufficiently set forth the fourth and fifth elements of common law fraud. *See, e.g.*, *Maccabi Pharm.*, 2026 WL 794231, at *9 (finding that the fourth and fifth elements were satisfied where plaintiff averred that "it relied on the facially valid documents that

were submitted by the defaulting defendants," and, therefore, "paid out at least $516,988 in claims otherwise not reimbursable under the no-fault law" (citation omitted)); *New Century Pharm.*, 2021 WL 7830141, at *6 (same); *Nazarov*, 2015 WL 5774459, at *15 (finding that the issuance of reimbursements based on fraudulent billing satisfies the fourth and fifth prongs).

***

The undersigned respectfully recommends that the Court find that Plaintiffs have adequately alleged common law fraud as to Defaulting Defendants.

**C. Unjust Enrichment**

Plaintiffs also seek default judgment on their unjust enrichment claim against Defaulting Defendants. *See* Dkt. No. 27-1 at 34-35. Because the undersigned recommends granting default judgment on the common law fraud claims against these parties, it is unnecessary to also grant judgment on the unjust enrichment claims.

"Properly understood, an unjust enrichment claim is intended to protect a plaintiff only in those circumstances where it has no other recourse in tort or contract." *Maccabi Pharm.*, 2026 WL 794231, at *9 (first quoting *Avetisyan*, 2021 WL 1227625, at *6; and then citing *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1186 (N.Y. 2012) ("[Unjust enrichment] is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff . . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.")).

Here, Plaintiffs allege that Defaulting Defendants were unjustly enriched at Plaintiffs' expense, but based these claims on the same transactions as their claims for common law fraud. *See* Dkt. No. 27-1 at 35; Dkt. No. 1 ¶¶ 257-59. Accordingly, the unjust enrichment claims are

duplicative of the fraud claims and, as a result, Plaintiffs are not entitled to a judgment on their unjust enrichment claims. *See, e.g.*, *Elmwood Park Med. Grp.*, 2022 WL 772737, at *9 ("[F]inding liability on [plaintiff's] unjust enrichment claims would be inappropriate given that they are based on the same transactions and conduct as the common law fraud claims."); *Abramov*, 2020 WL 1172697, at *12 (finding unjust enrichment claims duplicative of fraud claims (first citing *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) ("Unjust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed."); then citing *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) ("The instant case is not representative of the 'unusual' circumstances which provide for an unjust enrichment claim. The Plaintiffs' unjust enrichment claim rehashes and improperly duplicates their fraud claims . . . . As this claim is based on the same set of facts as the fraud claim, the Plaintiffs' thirteenth (unjust enrichment) claim is dismissed."); and then citing *Nazarov*, 2015 WL 5774459, at *16 (denying liability in default judgment motion reasoning that "as Plaintiffs have established the Danilovich Defendants' liability for common law fraud, Plaintiffs have not adequately pled a claim for unjust enrichment because that claim would rely on duplicative facts"))).

Thus, in light of the undersigned's recommendation that the Court grant default judgment on the common law fraud claims against Defaulting Defendants, the undersigned respectfully recommends that the Court deny Plaintiffs' request for default judgment on their unjust enrichment claim and dismiss the unjust enrichment claim.

## VI. Damages

As Plaintiffs have proven Defaulting Defendants' liability on their RICO and common law fraud claims, the Court next evaluates damages. "While a party's default is deemed to constitute

a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158 (citations omitted). "Rather, [t]he [C]ourt must be satisfied that [the] [p]laintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (internal quotation marks and citation omitted). On a default judgment motion, "[a]n evidentiary hearing is not required; rather, in determining damages, the Court may rely on detailed affidavits and other documentary evidence." *Abbott Lab'ys v. Adelphia Supply USA,* No. 15-CV-5826 (CBA) (LB), 2024 WL 4250223, at *7 (E.D.N.Y. Aug. 22, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 4263935 (E.D.N.Y. Sep. 23, 2024). Concerning the scope of damage recovery pursuant to a default judgment, the Second Circuit has held that a default judgment does not give plaintiff "a blank check to recover from [defendant] any losses it had ever suffered from whatever source. [The plaintiff] could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show 'proximate cause.'" *Greyhound Exhibitgroup*, 973 F.2d at 159 (citation omitted).

Plaintiffs seek treble compensatory damages as well as prejudgment interest against Ageyev in the total amount of $168,510.72. *See* Dkt. No. 27-4 at 2; Dkt. No. 27-17 at 2. As to GVA Group, Plaintiffs seek compensatory damages with prejudgment interest in the total amount of $61,988.26. *See* Dkt. No. 27-4 at 2; Dkt. No. 27-17 at 2. In support of their damages requests, Plaintiffs have filed the Declaration of Oren Kutnowsky, an Analyst in the Special Investigations Unit of Plaintiff Allstate Insurance Company, and a spreadsheet "containing information extracted from summaries of payments made on claims for reimbursement under the No-Fault law," which are "maintained by Allstate in its ordinary course of business." *See* Dkt. No. 27-2; Dkt. No. 27-3

¶ 58; Dkt. No. 27-15. The spreadsheet itemizes "each payment made by Plaintiffs to the GVA Group enterprise in which Ageyev is alleged to have participated." Dkt. No. 27-3 ¶ 58; *see also* Dkt. No. 27-15. The spreadsheet lists the claim numbers submitted, the dates of payment, the amounts paid, and the check numbers. *See* Dkt. No. 27-15. The spreadsheet shows compensatory damages in the total amount of $53,256.23. *Id.* Plaintiffs also filed their prejudgment interest calculations. *See* Dkt. No. 27-3 ¶ 64; Dkt. No. 27-16.[8]

**A. RICO Damages Against Ageyev**

Plaintiffs argue that, based on the itemized spreadsheet and the underlying information, they sustained damages in the amount of $53,256.23, which they argue should be trebled under RICO against Ageyev for a total award of $159,768.69. Dkt. No. 27-1 at 36-37.

The documents filed by Plaintiffs support their claim of $53,256.23 in damages related to the RICO violation. *See Nazarov*, 2015 WL 5774459, at *17 (noting that "[i]n similar cases, courts have found such documentation [(an affidavit from an Allstate Special Investigations Unit analyst and copies of payment summaries)] sufficient to support a damages award" (collecting cases)); *Maccabi Pharm.*, 2026 WL 794231, at *11 (finding damages calculations submitted by plaintiffs, supported by a declaration of a Allstate Special Investigations Unit analyst, sufficient evidence on which to award RICO damages (collecting cases)).

Pursuant to RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c); *see also Allstate Ins. Co. v. Geykhman*, No. 24-CV-4580 (PKC) (CLP), 2025 WL 2576749, at *16 (E.D.N.Y. Sep. 7, 2025) (noting that "an injured party is automatically entitled to recover 'threefold the damages' it sustains

[8] Plaintiffs do not seek attorneys' fees or costs, *see* Dkt. No. 29, nor do they seek postjudgment interest.

for a RICO violation" (quoting 18 U.S.C. § 1964(c))), *report and recommendation adopted in part*, Text Order, dated Feb. 19, 2026. "Courts have found that an award of treble damages is appropriate in no-fault billing cases involving RICO fraud claims, even in the context of a default." *Avetisyan*, 2021 WL 1227625, at *8 (quoting *Afanasyev*, 2016 WL 1156769, at *12 (collecting cases)); *Maccabi Pharm.*, 2026 WL 794231, at *10 (same). Accordingly, Plaintiffs are entitled to trebled damages on the RICO claim.

The undersigned respectfully recommends that the Court award Plaintiffs treble damages on their RICO claim against Ageyev, in the total amount of $159,768.69.

**B. Fraud Damages and Joint and Several Liability**

Plaintiffs do not seek any additional damages on their fraud claim as to Ageyev, but seek compensatory damages in the amount of $53,256.23 against GVA Group on the fraud claim and argue that Ageyev and GVA Group are "jointly and severally liable for all damages" relating to the fraud claim. *See* Dkt. No. 27-1 at 36; Dkt. No. 27-4 at 2; Dkt. No. 27-17 at 2.

"As Plaintiffs have demonstrated liability on their fraud claims, they are entitled to damages in the entire amount they paid to Defaulting Defendants, unless they are already recovering those same damages under RICO." *New Century Pharm.*, 2021 WL 7830141, at *12 (first citing *Allstate Ins. Co. v. Williams*, No. 13-CV-2893 (RJD) (JMA), 2014 WL 6900121, at *10 (E.D.N.Y. Dec. 5, 2014) (adopting report & recommendation, and finding that "separate awards under RICO and state law would be duplicative"); and then citing *Gov't Emps. Ins. Co. v. Esses*, No. 12-CV-4424 (RJD) (VVP), 2013 WL 5972481, at *10 n.3 (E.D.N.Y. Nov. 5, 2013) (adopting report & recommendation)). Where RICO damages wholly compensate a plaintiff and that award has been trebled, a separate award of damages on an overlapping fraud claim would "amount to double recovery for plaintiff." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 479 (E.D.N.Y.

2021) (Cogan, J.) (citation omitted). Moreover, "New York law provides for joint and several liability for fraudulent acts where defendants acted jointly or concurrently to produce a single injury." *New Century Pharm.*, 2021 WL 7830141, at *12 (citations omitted).

Here, Plaintiffs allege that Ageyev submitted or caused to be submitted fraudulent claims through his company, GVA Group and, accordingly, Ageyev is jointly and severally liable with GVA Group for the $53,256.23 in common law fraud damages. These damages overlap with $53,256.23 of the $159,768.69 sought against Ageyev for the RICO violation. Plaintiffs' damages calculation and proposed judgment, however, appear to seek $53,256.23 from GVA Group separate and apart from the $159,768.69 sought from Ageyev. *See* Dkt. No. 27-4 at 2; Dkt. No. 27-17 at 4. Because the RICO damages wholly compensate Plaintiffs, and that award has been trebled, Plaintiffs are not entitled to a separate award on the fraud claim. *See Esses*, 2013 WL 5972481, at *10 n.3 ("Since the award of damages under RICO wholly compensates the plaintiffs, and the award having been trebled, the plaintiffs are not entitled to separate awards of damages on the claims for common law fraud and unjust enrichment.").

Accordingly, the undersigned respectfully recommends that the Court decline to award any additional damages based on common law fraud, but recommends that GVA Group be held jointly and severally liable with Ageyev for $53,256.23 of the RICO damages, the actual damages from the GVA Group enterprise. *See, e.g.*, *New Century Pharm.*, 2021 WL 7830141, at *13 (recommending denial of plaintiffs' request for additional damages based on the common law fraud claim, but also recommending that the Court hold the non-RICO defendant jointly and severally liable with the RICO defendant for the fraud damages also attributed to the non-RICO defendant); *Bilyk*, 514 F. Supp. 3d at 479 (awarding trebled RICO damages against each individual defendant, "plus prejudgment interest on the fraud damages, for which the associated Retail Defendant is

jointly and severally liable for the total amount of fraud damages"); *Badia*, 2015 WL 1258218, at *24 (recommending that "Baneur and the Referral Defendants are jointly and severally liable for the $117,210.85 in actual damages arising from the fraud and RICO claims, respectively, and that the Referral Defendants alone are jointly and severally liable among themselves for $234,421.70 (which represents the trebled RICO damages reduced by $117,210.85)").

**C. Prejudgment Interest**

Plaintiffs seek prejudgment interest on the damages awards under RICO and the state claims. Dkt. No. 27-1 at 37-38.

First, as to RICO, "[a]n award of prejudgment interest is [not] mandatory . . . under RICO"; rather, prejudgment interest is "awarded at the discretion of the Court." *Abramov*, 2020 WL 1172697, at *14 (citations omitted). "Courts in this circuit generally only award prejudgment interest in civil RICO actions where treble damages do not adequately compensate for plaintiff's losses." *Id.* Here, Plaintiffs are already sufficiently compensated by the recommended award of treble damages for their RICO claim, and, thus, an award of prejudgment interest from Ageyev on the RICO damages is inappropriate. *See id.* ("[T]he Court finds that Allstate is already sufficiently compensated by the award of treble damages for its RICO claims, and thus an award of prejudgment interest from the RICO Defaulting Defendants is inappropriate."); *Abutova*, 2017 WL 1185222, at *9 ("[T]he Court finds that the treble damages awarded under the civil RICO claims are sufficient to compensate Allstate."); *Avetisyan*, 2021 WL 1227625, at *9 (finding "that plaintiffs are already sufficiently compensated by the award of treble damages for their RICO claims, and thus an award of prejudgment interest from the RICO defendants is inappropriate"). Thus, no prejudment interested is warranted on the RICO claim.

Second, as to prejudgment interest relating to the common law fraud claim, as discussed above, the undersigned has recommended that the Court decline to award any additional damages based on common law fraud, but recommends that GVA Group be held jointly and severally liable with Ageyev for $53,256.23 of the RICO damages. Although prejudgment interest is mandatory for state law fraud in New York, *see Avetisyan*, 2021 WL 1227625, at *9 (citations omitted), here the undersigned has recommended that Plaintiffs not receive additional compensatory damages on their fraud claim. Plaintiffs, therefore, are not entitled to interest on those damages. *See Gov't Emps. Ins. Co. v. Direct RX Pharm., Inc.*, No. 19-CV-5876 (DG) (LB), 2021 WL 6494722, at *5 (E.D.N.Y. Dec. 16, 2021) (recommending that plaintiffs "should not recover compensatory damages nor interest for their common law fraud claim"), *report and recommendation adopted*, 2022 WL 125822 (E.D.N.Y. Jan. 13, 2022).

Accordingly, the undersigned respectfully recommends that the Court deny Plaintiffs' request for prejudgment interest.

**D. Postjudgment Interest**

The Second Circuit has "consistently held that an award of postjudgment interest is mandatory." *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (citation omitted). Postjudgment interest is mandatory, even if not sought by the plaintiff. *See Garcia v. Three Star Constr. Grp. LLC*, No. 26-CV-1353 (BMC), 2026 WL 1983312, at *3 (E.D.N.Y. July 9, 2026) ("Plaintiff argues that the judgment should include a provision for post-judgment interest. That is unnecessary as post-judgment interest accrues on every federal judgment as a matter of law." (citing 28 U.S.C. § 1961)); *Garcia v. J&L Constr. LLC*, No. 24-CV-5260 (DEH) (GS), 2026 WL 789496, at *13 (S.D.N.Y. Jan. 26, 2026) (recommending that the award of postjudgment interest is mandatory "regardless of whether postjudgment interest is sought by the plaintiff" (citing

*Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151 (DLC) (SN), 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013) (adopting report and recommendation, and noting that, "[a]lthough the Complaint did not seek relief in the form of post-judgment interest, such relief is mandatory under federal law"))), *report and recommendation adopted*, Dkt. No. 62 (S.D.N.Y. Feb. 24, 2026). Moreover, federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961(a) on civil RICO and common law fraud claims. *See, e.g., Zamora v. JP Morgan Chase Bank, N.A.*, No. 14-CV-5344 (WHP) (SN), 2019 WL 3401693, at *8 (S.D.N.Y. May 10, 2019) (recommending postjudgment interest under 28 U.S.C. § 1961 in a case involving civil RICO on a default judgment motion), *report and recommendation adopted sub nom.*, *Zamora v. FIT Int'l Grp., Corp.*, 2019 WL 2416941 (S.D.N.Y. June 7, 2019); *see also J&L Constr.*, 2026 WL 789496, at *13 (awarding postjudgment interest under 28 U.S.C. § 1961 for a fraud claim because "in a diversity case 'postjudgment interest is governed by federal statute'" (quoting *Schipani*, 541 F.3d at 164-65)).

Under 28 U.S.C. § 1961, "interest is calculated 'from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.'" *Weber Cap.*, 821 F. Supp. 3d at 389 (citation omitted).

Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded postjudgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

## VII. Declaratory Judgment

Finally, Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201, relieving Plaintiffs "from any obligation to pay any unpaid No-Fault claims submitted to them by GVA Group." Dkt. No. 27-4 at 3; *see also* Dkt. No. 1 ¶¶ 260-267; Dkt. No. 27-1 at 38-41. "Under the Declaratory

Judgment Act, 'any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Elmwood Park Med. Grp.*, 2022 WL 772737, at *12 (quoting 28 U.S.C. § 2201). The Declaratory Judgment Act "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant. The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)).

"A court may consider whether to enter a declaratory judgment only if the action presents an actual case or controversy that is 'real and immediate, allowing specific and conclusive relief,' and 'ripe for adjudication.'" *Id.* (quoting *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277 (ENV) (SMG), 2016 WL 11395017, at *4 (E.D.N.Y. Feb. 17, 2016), *report and recommendation adopted sub nom.*, *Gov't Emps. Ins. Co. v. Premier Pro. Servs.*, 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016)); *see also Maccabi Pharm.*, 2026 WL 794231, at *9 ("A party seeking a declaratory judgment must allege that there is a 'substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" (quoting *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996))). "The controversy must be 'real and substantial' such that declaratory relief will provide 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Maccabi Pharm.*, 2026 WL 794231, at *9 (citing *Allstate Ins. Co. v. Williams*, No. 13-CV-2893 (RJD) (JO), 2015 WL 5560543, at *6 (E.D.N.Y. Aug. 28, 2015), *report and recommendation*

*adopted sub nom.*, *Allstate Ins. Co. v. Dublin*, 2015 WL 5560546 (E.D.N.Y. Sep. 21, 2015)). Declaratory relief "is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings.'" *Elmwood Park Med. Grp.*, 2022 WL 772737, at *12; *see also Maccabi Pharm.*, 2026 WL 794231, at *10 (same). "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." *Bilyk*, 514 F. Supp. 3d at 475 (quoting *Gov't Emps. Ins. Co. v. Jacques*, No. 14-CV-5299 (KAM) (VMS), 2017 WL 9487191, at *9 (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1214460 (Mar. 31, 2017)).

Here, Plaintiffs have filed a spreadsheet that contains information, extracted from billing summaries, reflecting the bills that Plaintiffs have received from GVA Group but remain unpaid. *See* Dkt. No. 27-2 ¶ 5; Dkt. No. 27-3 ¶ 67; Dkt. No. 27-18. A total of $96,721.25 in pending and/or unpaid claims submitted to Plaintiffs by GVA Group remains actively in dispute. *See* Dkt. No. 27-2 ¶ 6; Dkt. No. 27-3 ¶ 66; Dkt. No. 27-18. Further, GVA Group continues to pursue one collection proceeding in Kings County Civil Court. Dkt. No. 27-3 ¶ 68; *see also* Dkt. No. 27-19. A review of the docket of the Kings County Civil Court proceeding identified by Plaintiffs demonstrates that GVA Group initiated a proceeding against Allstate Property & Casualty Insurance Company in 2023, alleging failure to pay an insurance claim for $9,848.58, interest, and attorney's fees, and that, on May 20, 2024, GVA Group filed a Notice of Trial, indicating that the proceeding was ready for trial. *See* Notice of Trial, *GVA Group Inc. v. Allstate Property & Casualty Ins. Co.*, No. CV-705362-24/KI (May 20, 2024), Dkt. No. 7. The case remains pending. Plaintiffs argue, therefore, that "unless or until Plaintiffs' declaratory relief is granted, [GVA Group] may continue to submit

to new claims and file collections proceedings for the unpaid claims either in the civil courts of the State of New York and/or before Arbitrators of the American Arbitration Association seeking payment from Plaintiffs for the same DME, and/or orthotic devices that Plaintiffs' Complaint alleges has been fraudulently billed." Dkt. No. 27-3 ¶ 68.

Plaintiffs have sufficiently alleged that there is an actual controversy between Plaintiffs and Defaulting Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Specifically, the unpaid claims and pending collection proceeding constitute an actual controversy for which a declaratory judgment would provide specific and conclusive relief from the uncertainty that those claims pose. "Courts in this district routinely grant declaratory relief in similar circumstances, where fraudulently incorporated medical practices have fraudulent claims pending against insurers for No-Fault benefits." *Elmwood Park Med. Grp.*, 2022 WL 772737, at *13 (collecting cases); *see also Avetisyan*, 2021 WL 1227625, at *10 ("Courts in this district have granted declaratory relief in numerous cases where the defendants . . . were involved in similar schemes to defraud insurers for charges that are not permissible under the no-fault law." (collecting cases)); *Bilyk*, 514 F. Supp. 3d at 476 (granting plaintiff's request for a declaratory judgment and ordering that "plaintiff is not obligated to pay any of the defaulted Retail Defendants' pending claims" where plaintiff "established the existence of an actual controversy so as to warrant a declaratory judgment" via plaintiff's "chart demonstrating that 181 collections actions and arbitrations are pending between itself and the defaulted Retail Defendants" and plaintiff's sufficiently particular allegations regarding how "how defendants' pending, unpaid claims are part of a fraudulent scheme to submit inflated claims").

Accordingly, the undersigned respectfully recommends that Plaintiffs are entitled to a declaration that they are not obligated to pay GVA Group's outstanding claims and that their request for declaratory relief be granted.

## VIII. Conclusion

For the foregoing reasons, the undersigned respectfully recommends that Plaintiffs' motion be granted in part and denied in part. Specifically, the undersigned respectfully recommends that the Court hold that Defendant Ageyev is liable under RICO for the first cause of action alleged in the Complaint, that Defaulting Defendants are liable for common law fraud as to the second cause of action alleged in the Complaint, and that RICO damages be trebled and awarded against Ageyev in the amount of $159,768.69, $53,256.23 of which GVA Group should be held jointly and severally liable with Ageyev. Additionally, the undersigned respectfully recommends that the Court grant Plaintiffs' request for declaratory relief and direct that Plaintiffs are not obligated to pay GVA Group's outstanding claims. Further, the undersigned respectfully recommends that the Court dismiss Plaintiffs' third cause of action for unjust enrichment, deny Plaintiffs' request for prejudgment interest, and dismiss the John Doe Defendants from this action without prejudice. Finally, the undersigned respectfully recommends that the Court award postjudgment interest.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiffs' counsel to serve a copy of this Report and Recommendation by first-class mail and overnight mail on Defendants and to file proof of service on ECF by July 16, 2026. Copies shall be served at the following addresses:

GVA Group Inc.
2167 East 21st St., Suite 242
Brooklyn, NY 11229

GVA Group Inc.
1133 East 35th St., Suite 4D
Brooklyn, NY 11210

Aleksandr Ageyev
1854 Ocean Avenue, Apartment 3F
Brooklyn, New York 11230

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merchant. The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)).

Dated: Brooklyn, New York
July 15, 2026

**SO ORDERED.**

*/s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge